**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-25853-RAR**

**ALBERTO RODRIGUEZ DOMINGUEZ,**

Petitioner,

v.

**WARDEN, FEDERAL DETENTION CENTER MIAMI**, *et al.*,

Respondents.
_______________________________________________/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before the Court upon Petitioner Alberto Rodriguez Dominguez's Petition for Writ of Habeas Corpus ("Petition"), [ECF No. 1], filed on August 26, 2026. Petitioner alleges that he has been unlawfully committed to detention and seeks that the Court order his release. *See* Pet., Prayer for Relief. On September 4, 2026, Respondents filed a Response to the Petition ("Response"), [ECF No. 8]. Petitioner subsequently filed a Reply, [ECF No. 15], on September 23, 2026. The Court having reviewed the Petition, the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Petition is **DENIED** as set forth herein.

**BACKGROUND**

Petitioner is a Cuban national that arrived in the United States in 2012. Pet. ¶ 1; Resp. at 1. On January 12, 2012, Petitioner applied for admission to enter the United States from Mexico at the Gateway to Americas Port of Entry in Laredo, Texas. Resp. at 1. The next day, Petitioner was deemed inadmissible and processed for a Notice to Appear ("NTA"), but the NTA was never filed with the Executive Office for Immigration Review ("EOIR"). *Id.* Petitioner was paroled into

the United States pending removal proceedings. *Id.* On July 31, 2014, Petitioner's status was adjusted to that of Lawful Permanent Resident based on the Cuban Adjustment Act. *Id.* at 2.

On October 4, 2017, Petitioner was convicted for Trafficking in Cocaine and Conspiracy to Traffic Cocaine in the 17th Judicial Circuit Court in and for Broward County, Florida and sentenced to a term of three years' imprisonment. Resp. at 2. On March 7, 2019, United States Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") was notified of Petitioner's upcoming release from the Florida Department of Corrections. *Id.* Petitioner entered ICE ERO custody on March 13, 2019. *Id.*

On March 14, 2019, Petitioner was served with an NTA charging that he was subject to removal from the United States pursuant to Section 237(a)(2)(B)(i) of the Immigration and Nationality Act because following his admission, he had been convicted of a violation of state law. *See* Notice to Appear, dated Mar. 14, 2019, [ECF No. 8-5]. An Immigration Judge denied Petitioner's request for change in custody status on April 3, 2019. *See* Order of the Immigration Judge with Respect to Custody, dated Apr. 3, 2019, [ECF No. 8-6]. That same day, an Immigration Judge ordered Petitioner removed from the United States to Cuba. Pet. ¶ 2; *see* Order of the Immigration Judge, dated Apr. 3, 2019, [ECF No. 8-7]. Petitioner waived his right to appeal, resulting in a final administrative order of removal. Pet. ¶ 2.

On April 15, 2019, Petitioner was released on an Order of Supervision ("OSUP"). Pet. ¶ 2; *see* Order of Supervision, dated Apr. 15, 2019, [ECF No. 8-8]. On February 6, 2026, Petitioner was encountered on the Miami River and taken into custody by United States Customs and Border Control. Resp. at 2–3. Petitioner was taken into ICE ERO custody on or about February 9, 2026. *Id.* at 3.

Petitioner argues that his continued detention violates the Fifth Amendment Due Process Clause as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has been detained for over six months and removal is not likely in the reasonably foreseeable future. *See* Pet. at 8–10. He asks the Court to order his release from custody. *See id.* at 11.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas*, 533 U.S. at 687 (noting that "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner contends that his detention violates his Fifth Amendment substantive due process rights because he "has remained detained since February 6, 2026, for more than six months, despite ICE's express representation that it had the 'ability and means to effectuate' his removal," so his "continued detention no longer bears a reasonable relationship to the purpose of effectuating removal." *See* Pet. ¶ 38. Petitioner similarly asserts that his detention violates 8 U.S.C. § 1231(a)(6) because he "has been detained for more than six months" and "has good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable

future." *See id.* ¶¶ 42–43. Petitioner lastly claims a procedural due process violation, alleging that ICE failed to provide him with a Notice of Revocation of Release until four months after he was detained. *See id.* ¶ 40.[1] The Court addresses each argument in turn.

**I. Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231 and his detention comports with due process.**

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A). But the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C).

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. As this Court has explained, "[t]o avoid reading the statute as violating the Fifth Amendment Due Process Clause

[1] While the parties do not raise the issue of jurisdiction, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). While there are certain jurisdiction stripping provisions that may preclude judicial review such as § 1252(g) and § 1252(b)(9), the Court's independent review of the record reveals that none are applicable here. *See e.g., Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, No. 3:25-cv-1287-MMH-MCR, 2026 WL 83980, at *2–3 (M.D. Fla. Jan. 12, 2026) (finding that petitioner's claims are not barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) because petitioner is not attacking "ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal" nor is he "seeking to challenge the decision to seek removal or the process by which removability will be determined."); *Boffill v. Field Off. Dir.*, No. 25-25179, 2025 WL 3246868, at *2–4 (S.D. Fla. Nov. 20, 2025) (same). Because Petitioner "is not challenging his removal proceedings—he is challenging the antecedent detention," the Petition is squarely within the Court's jurisdiction. *See Hernandez v. Noem*, No. 2:26-CV-515-KCD-NPM, 2026 WL 809576, at *2 (M.D. Fla. Mar. 24, 2026).

and to create uniform standards for evaluating challenges to post-removal-period detention, the Supreme Court held that any detention of six months or less was a 'presumptively reasonable period of detention,' and that 'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025) (quoting *Zadvydas*, 533 U.S. at 701).

Thus, to state a *Zadvydas* claim, the petitioner must show (1) "post-removal order detention in excess of six months" and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). The parties do not dispute that Petitioner has been in custody for over sixth months, since February 6, 2026. *See* Pet. ¶ 3; Resp. at 1 ("[Petitioner] was taken into the custody of U.S. Immigration and Customs Enforcement on February 6, 2026."). However, Respondents argue that Petitioner's *Zadvydas* claim nonetheless fails because (1) he has "failed to meet his burden of establishing that there is no significant likelihood of his removal in the reasonably foreseeable future" and (2) his "own conduct has obstructed his removal and caused the delay of which he now complains." *See* Resp. at 6. Respondents appear to concede that removal to Cuba is currently unlikely but argue that by refusing to depart his housing unit and sign a Notice of Removal to Mexico, Petitioner has delayed his removal. *See id.*

Petitioner counters by arguing that declining to consent to third-country removal to Mexico does not constitute obstructing one's removal under 8 U.S.C. § 1231(a)(1)(C). *See* Reply at 4. Petitioner also argues that "any tolling is minimal," as ICE did not serve Plaintiff with the Notice of Removal to Mexico until March 31, 2026, did not issue a Notice of Failure to Comply until May 14, 2026, and did not make further removal attempts after April 17, 2026. *See id.* at 5.

Pursuant to 8 U.S.C. § 1231(a)(1)(C), the government may detain an alien beyond the presumptively reasonable removal period if the alien either "fails or refuses to make timely application in good faith for travel or other documents necessary to [his] departure" or "conspires or acts to prevent [his] removal subject to an order of removal." *See* 8 U.S.C. § 1231(a)(1)(C). Indeed, when "'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' [] he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019) (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)).

The Eleventh Circuit has consistently held that petitioners who prevent their own removal from the United States may be detained longer than the six-month period contemplated in *Zadvydas*. *See Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (denying habeas petition of petitioner who had been detained for three years because "[h]is refusal to voluntarily sign his travel document or inform Brazil that he is willing to return has extended his removal period"); *Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) (denying habeas petition where petitioner thwarted his removal by refusing to comply with removal procedures and "complete forms necessary for him to obtain a new travel document").

In *Dumont Rodriguez v. Miami ICE Field Office Director*, No. 26-23664-RAR, 2026 WL 2568545, at *4 (S.D. Fla. Aug. 31, 2026), this Court denied the petition of a similarly situated petitioner upon concluding that he thwarted his removal and thus tolled the removal period by refusing to sign two notices of removal and a notice of failure to comply. In reaching this conclusion, the Court relied on the fact that Petitioner twice refused to sign Notices of Removal to Mexico and was also provided a Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g)

informing him that "[he would] remain in ICE custody until [he] demonstrate[d] that [he was] making reasonable efforts to comply with the order of removal" and that his refusal to comply with the order of removal would extend the removal period. *Id.*

Like in *Dumont*, Petitioner has thwarted his removal—first, by refusing to depart his housing unit and comply with removal on April 17, 2026, and second, by refusing to sign the Notice of Removal to Mexico dated July 31, 2026. *See* Resp. at 3, 6; Notice of Removal, dated July 31, 2026, [ECF No. 8-15]. Petitioner was similarly provided with a Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g), which made him aware that his refusal to depart his housing unit on April 17, 2026 constituted failure to comply with the order of removal and that continued willful refusal would extend the removal period. *See* [ECF No. 8-11]. Accordingly, "[b]ecause [Petitioner] is apparently responsible for stalling his own departure, the presumptively reasonable period for his detention is tolled." *Dumont Rodriguez*, 2026 WL 2568545, at *4 (quoting *Williams v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:26-CV-1525-KCD-KRH, 2026 WL 1529366, at *2 (M.D. Fla. June 1, 2026)); *see also Torre v. United States Immigr. & Customs Enf't*, No. 26-25365, 2026 WL 2409164, at *2 (S.D. Fla. Aug. 18, 2026) ("Petitioner's multiple refusals to sign the required Notice of Removal tolls his time of detention for *Zadvydas* purposes.").

Accordingly, Petitioner's removal period was tolled due to his failure to comply with efforts to remove him. As such, the Court need not reach the second prong of the *Zadvydas* analysis—whether removal is reasonably foreseeable. However, if Petitioner complies with removal efforts and his detention continues, he remains free to file a new petition seeking relief under *Zadvydas* demonstrating that his continued detention exceeds six months and that there is no significant likelihood of removal in the reasonably foreseeable future. *See Akinwale*, 287 F.3d

at 1050 ("Because circumstances may ultimately change in Akinwale's situation, we affirm the dismissal without prejudicing Akinwale's ability to file a new § 2241 petition.").

## II. Petitioner's procedural due process claim also fails.

In addition to his *Zadvydas* claim, Petitioner claims a violation of procedural due process because ICE failed to provide him with a Notice of Revocation of Release and an opportunity to be heard until June 2, 2026—almost four months following his re-detention. *See* Pet. ¶ 40. Petitioner contends that "[b]y depriving Petitioner of his liberty for months before providing notice of the basis for revocation and an opportunity to respond, ICE deprived Petitioner of meaningful and timely process in violation of the Fifth Amendment." *Id.* ¶ 41. In his Reply, Petitioner further asserts that the 116-day delay in receiving notice of the reasons for revocation and an initial informal interview violates ICE's own binding regulations—specifically, that which entitled him to an initial informal interview to respond to the reasons for revocation "promptly" after his return to custody. *See* Reply at 5–6; 8 C.F.R. § 241.4(*l*)(1).

Section 241.4(*l*)(1) provides that an alien "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). Upon revocation, such an alien "will be notified of the reasons for revocation of his or her release or parole" and "afforded an initial informal interview promptly after his or her return to . . . custody." *Id.* Here, Petitioner maintains that his informal interview, which was conducted 116 days after he was detained on February 6, 2026, was not sufficiently prompt to comply with Section 241.4(*l*)(1).

Under the *Accardi* doctrine, "agency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985) (quotation omitted). However, as this Court

has observed, an agency's deviation from its regulations, standing alone, does not warrant "the extraordinary remedy [Petitioner] seeks: outright release from custody." *See Dumont Rodriguez*, 2026 WL 2568545, at *6 (quoting *Bonachea v. Noem, et al.,* No. 2:26-CV-653-KCD-NPM, 2026 WL 1096846, at *5 (M.D. Fla. Apr. 23, 2026)); *see also Grigorian*, 824 F. Supp. 3d at 1255 (observing that "not every agency misstep will compel reversal of agency action, much less release of someone in custody"). "[T]he Supreme Court has held that 'if sufficient ground for [Petitioner's] detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.'" *Acosta Gonzalez v. Noem*, No. 26-60781, 2026 WL 1077836, at *4 (S.D. Fla. Apr. 20, 2026) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

Similarly, here, where there is a continued statutory basis for Petitioner's detention, release is not warranted by mere deviation from agency regulations. *See Bonachea,* 2026 WL 1096846, at *5 ("The writ of habeas corpus exists to remedy currently unlawful confinement, not to orchestrate a revolving door of release and immediate re-detention when the underlying statutory basis for custody remains perfectly valid."). Thus, even if the nearly four-month delay in affording Petitioner an initial informal interview is not sufficiently prompt to comply with Section 241.4(*l*)(1), ICE's deviation from this regulation alone does not warrant Petitioner's release from custody.

That said, "[t]he opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian*, 824 F. Supp. 3d at 1255. "The essence of due process is an opportunity to be heard at a meaningful time and in a meaningful way." *Sharma v. Drug Enf't Agency*, 511 F. App'x 898, 902 (11th Cir. 2013). But upon review of the record, the Court is persuaded that Petitioner was provided with a Notice of Revocation of Release and an interview that comports with due process.

Both parties agree that Respondents provided Petitioner with a Notice of Revocation of Release and an informal interview on June 2, 2026. *See* Pet. ¶ 40; Resp. at 3; Reply at 5. During the informal interview, "the ICE ERO officer explained to Petitioner that his OSUP was revoked to effectuate his removal from the United States." Resp. at 3; *see* Notice of Revocation of Release, dated June 2, 2026, [ECF No. 8-16]. Additionally, "Petitioner was given an opportunity to ask questions, but he stated that he did not have any." Resp. at 3.

On this record, Petitioner received adequate notice and an opportunity to be heard such that his Fifth Amendment due process rights were not prejudiced. *See Sharma*, 511 F. App'x at 902 ("[E]ven where a governmental entity fails to follow its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced."); *see also Surovtsev v. Noem*, No. 25-00160, 2025 WL 3264479, at *9 (N.D. Tex. Oct. 31, 2025) ("[E]ven if the respondents did violate the[] procedures [requiring notice, informal interview, and opportunity to respond and present limited evidence], any error was harmless in light of the expanded procedure that [Petitioner] has received throughout this case."). And even if the 116-day gap violated due process, "Petitioner's eventual informal interview constitutes an adequate post-deprivation remedy available to cure the violation, such that Petitioner was not wholly deprived of his due process rights." *Leonardo Ramos v. Warden of the Mia. Fed. Det. Ctr.*, No. 26-CV-24966-RAR, 2026 WL 3023694, at *5 (S.D. Fla. Oct. 8, 2026).

Petitioner's reliance on this Court's decision in *Grigorian* is inapposite. In *Grigorian*, petitioner had *never* "received a meaningful opportunity to be heard or to contest the basis for his re-detention." 824 F. Supp. 3d at 1256. And while "the eventual promise of a formal review [is not] enough to cure a due process violation[,]" *see id.*, here, Petitioner was in fact given an informal

interview. Accordingly, Respondents' delay in providing Petitioner with a Notice of Revocation of Release and an informal interview does not entitle Petitioner to release.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner Alberto Rodriguez Dominguez's Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED**.

2. All deadlines are **TERMINATED**, and any pending motions are **DENIED**.

3. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 19th day of October, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**